## HOWARD S. HILTZ *vs.* S. G. WILLIAMS.

Suffolk.   January 12, 1897. — January 13, 1897.

Present: FIELD, C. J., HOLMES, KNOWLTON, & MORTON, JJ.

*Broker's Commission — Action.*

If, in an action to recover a commission for negotiating a sale of real estate, there is evidence that the defendant employed the plaintiff to sell the land, and the plaintiff, in pursuance of his employment, called A.'s attention to the land and had some talk with him about buying it, and that the land was sold subsequently to A., who went to see the defendant in relation to it, by a person who had the management of the defendant's business, it is competent for the judge, trying the case without a jury, to infer that A. ultimately purchased the land in consequence of the plaintiff's efforts to sell it, and to find in his favor.

CONTRACT, to recover $70 as a commission for negotiating a sale of real estate in Wellesley.   Trial in the Superior Court, without a jury, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to prove that the plaintiff was station agent for the Boston and Albany Railroad Company, at Eliot, in the city of Newton; and that he did a real estate business with the consent of the railroad authorities.

The plaintiff testified, in substance, as follows: "Previous to November 14, 1894, I had been informed that the defendant had some real estate for sale, and I wrote to him to know if such was the fact.   In reply to my letter, I received from the defendant a letter, containing the following: 'I am not very anxious to sell, but would like to know about what the party you mention is willing to pay for the lot.'   On December 19, 1894, I talked with Mr. Foster's agent, one Delany; I sent word by Delany to Foster something in regard to the price of the land. On the twentieth day of December I went to see the defendant, and told him that I had an offer for the land from Edgar W. Foster.   The defendant informed me that Foster had been there about an hour and a half previous to my call.   On February 28, 1895, I had an offer from Foster of $175 per acre for the land. On the fourth day of March I wrote to the defendant, but received no reply, and then on March 12th I went to see him.   I

asked him if he had decided to accept the second offer that Foster had made for the land, and he said that he had not decided, but he would do so in a few days. I saw the defendant three days later. He told me to see Mr. Clapp, at No. 165 High Street, Boston, and, if he said it would be all right to sell at that price, to do so. On the same day I went to see Clapp, and found him at Foster's office. Foster, who was present, told me that Clapp was writing out the agreement for the sale of the land. I told Clapp that the defendant had sent me to know whether he would accept the offer for the property, and Clapp said that, under the circumstances, he would advise him to sell, and asked me in what way I was connected with the matter, and I told him I was agent for the defendant. I told him that my commission would be two and one half per cent on the sale of the land. This was before I knew that the land was sold. Sometime afterwards, and before the eleventh day of April, I called on the defendant again, and he informed me that the trade had been closed, and the money paid. Something was said about a commission. He told me to make out my bill, and send it to Clapp. I never sent the bill for the commission to the defendant, but did send a bill to Clapp."

On cross-examination, the plaintiff testified that he understood that the defendant referred him to Clapp, so that his opinion might be taken before anything should be done; and that the defendant wanted Clapp's judgment on the matter.

Edgar W. Foster, called as a witness by the plaintiff, testified that he was a dealer in real estate, and purchased the defendant's estate; that the plaintiff told him about it, and informed him that he thought the property could be bought; that the witness told him to look it up, and make the defendant an offer for it, and to let him know if the offer would be accepted; that on the very day that he talked with the plaintiff about the land, he went to see the defendant; and that he did not say anything to the defendant about the plaintiff sending him, or telling him of the land, and did not mention the plaintiff's name at all.

On cross-examination, the witness testified: " I looked over the land, and came to the conclusion it was worth $150, so I offered him $150 for it. I said nothing to the plaintiff about that. I did n't consider that he was acting as agent for me. . . .

When I went to see the defendant I did not think anything about the plaintiff as being a broker in the transaction. He simply told me about the property being there, and said he thought it could be bought. When I made the offer of $150 an acre to the defendant, he said he would let me know a little later on whether he would accept that offer or not. I did not hear anything from him until quite a while afterwards, and I spoke to the plaintiff about it, and he said he would look the matter up further and make another offer for it. I told him that I would give $175 an acre for it. I afterwards made the deal with Clapp, who, as I understood, had the matter in his hands. I dealt with Clapp direct, as he had full authority. . . . The plaintiff had no further connection with the transaction, except as I have stated."

Albion R. Clapp, called as a witness by the defendant, testified that he had dealt in real estate, and had acted as agent for others in real estate transactions; that the defendant had left the management of most of his affairs to him; that the witness had been trying to sell the land in question for several years; that he never met the plaintiff until after the trade for the sale of this land with Foster was closed; that after he had closed the trade with Foster on March 15, 1895, he met the plaintiff for the first time; that the plaintiff asked him about this property, and he said that he had sold it to Foster, and the plaintiff said he should claim a commission on it then, if it was sold; and that he told the plaintiff that he did not think he was entitled to any commission on the sale, as he had not done anything about it.

On cross-examination, the witness testified that he first called on Foster in reference to this trade because the defendant asked him to do so; that the plaintiff sent him a bill, and in response he wrote the plaintiff a letter, declining to approve the bill for the full amount, and offering to pay him, " as soon as the trade is consummated," a commission of $45.93; that he had offered since then to pay him one half the commission and divide it with him; that in a later letter he told him that, when the sale was completed, he would see that he got his share of the commission; that he offered at one time to pay him $50 commission, in order to avoid any lawsuit; and that he wrote the letter on his own authority only.

The defendant requested the judge to rule, as matter of law, that, upon all the evidence, the plaintiff could not maintain his action.    The judge refused to rule as requested, and found for the plaintiff in the sum of $52.25.

The defendant alleged exceptions.

*C. E. Washburn*, for the defendant.

*H. D. Moore*, for the plaintiff.

BY THE COURT.    There was evidence that the defendant employed the plaintiff to sell the land, and that the plaintiff, in pursuance of this employment, called Foster's attention to the land, and had some talk with him about purchasing it.    It was competent for the court trying the case without a jury to infer from the evidence that Foster ultimately purchased the land in consequence of the efforts of the plaintiff to sell it.

*Exceptions overruled.*